**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **W.A.C.**, | |
| *Petitioner*, | No. 26-cv-03419 |
| v. | |
| **ERIC ROKOSKY, *et al.*,** | **OPINION** |
| *Respondents*. | |

**APPEARANCES:**

**Nora Christiani**
**Nhu-Y Ngo**
THE BRONX DEFENDERS
360 East 161st Street
The Bronx, NY 10451

**Leena Khandwala**
RUTGERS IMMIGRANT RIGHTS CLINIC
123 Washington Street
Ste 4th Floor
Newark, NJ 07102

 *On behalf of Petitioner*.

**John Francis Basiak**
**Jordan Milowe Anger**
U.S. ATTORNEY'S OFFICE
402 E. State Street, Room 430
Trenton, NJ 08608

 *On behalf of Respondents.*

**O'HEARN, District Judge.**

Petitioner, W.A.C.,[1] is a noncitizen who was recently detained at the Elizabeth Contract Detention Facility in Elizabeth, New Jersey, and filed a counseled Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). The Court granted the Petition and ordered Petitioner released on May 12, 2026. (ECF No. 23). This Opinion supplements the Court's Order.

## I.    BACKGROUND

Petitioner W.A.C. is a native and citizen of the Dominican Republic. He entered the United States at New York, New York, on September 20, 1997, as a lawful permanent resident following the approval of an I-130 petition filed by his father. (Soto Decl., ECF No. 13-1 at ¶ 5; Gov't Ex. 3, ECF No. 13-2 at 8). In 2014, Petitioner pleaded guilty in the United States District Court for the Southern District of New York to dealing in counterfeit U.S. currency, in violation of 18 U.S.C. § 473. (*Id.* at ¶ 6; Pet., ECF No. 1 at ¶ 29). He was sentenced to time served, three years of supervised release, and restitution. (Soto Decl., ECF No. 13-1 at ¶ 6).

On December 17, 2014, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear, charging him as removable based on his conviction. (*Id.* at ¶ 7). On December 20, 2017, an Immigration Judge ("IJ") sustained the removability charge, finding that Petitioner's conviction constituted an aggravated felony. (*Id.* at ¶ 8). On May 18, 2018, the IJ ordered Petitioner removed to the Dominican Republic. (*Id.* at ¶ 9). The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on March 20, 2020, thus rendering his removal order final. (*Id.* at ¶ 10). Petitioner was subsequently ordered to surrender himself to Immigration

---

[1]    The Court previously granted Petitioner's uncontested motion to proceed under a pseudonym. This Opinion thus refers to him by his initials as agreed by the parties. (ECF No. 10). A redacted copy of the Petition and accompanying exhibits was subsequently refiled. (ECF No. 18).

2

and Customs Enforcement ("ICE") on June 29, 2021, for removal. (Pet. Ex. F, ECF No. 1-7). He did so and was detained pending removal. (*Id.*). He was removed to the Dominican Republic on September 21, 2021. (Soto Decl., ECF No. 13-1 at ¶¶ 11–12; Pet., ECF No. 1 at ¶ 30).

Petitioner alleges that, after his removal, he became the target of narcotraffickers and corrupt Dominican police officers who attempted to recruit him and later threatened and attacked him after he refused. (*Id.* at ¶ 31). He ultimately returned to the United States to seek fear-based relief.[2] (*Id.*). Upon his return, on March 16, 2022, ICE reinstated Petitioner's prior removal order. (Soto Decl., ECF No. 13-1 at ¶ 14; Pet., ECF No. 1 at ¶ 32; Ex. B, ECF No. 1-3). But the following day, March 17, 2022, ICE released Petitioner under an order of supervision and enrolled him in "Alternatives to Detention" with weekly biometric reporting. (Soto Decl., ECF No. 13-1 at ¶ 15). Petitioner alleges that he complied with all of his supervision obligations and regularly appeared for ICE check-ins. (Pet., ECF No. 1 at ¶¶ 6, 120). He further alleges that in July 2022 he sent ICE a letter requesting a reasonable fear interview, but no interview occurred at that time. (*Id.* at ¶ 32).

On April 22, 2025—after more than three years of full compliance with his terms of supervised release—ICE suddenly re-detained Petitioner after he appeared at a regularly scheduled check-in, revoked his order of supervision and took him into custody pending removal to the Dominican Republic. (*Id.* at ¶¶ 6, 32; Soto Decl., ECF No. 13-1 at ¶ 16). Petitioner has remained in ICE custody since then.

---

[2]  The record is unclear as to precisely when or where Petitioner reentered the United States. The ICE declaration states that Petitioner was arrested on or about Jan. 28, 2022, while attempting to enter the country near San Luis, Arizona. (Soto Decl., ECF No. 13-1 at ¶ 13). However, the notice reinstating his prior removal order indicates that he reentered on March 7, 2022, near Santa Teresa, New Mexico. (Pet. Ex. B, ECF No. 1-3). Petitioner alleges that he presented himself at the border. (ECF No. 1 at ¶ 32). These facts are immaterial to the Court's decision.

At the time of his re-detention, ICE did not possess any travel documents for Petitioner. However, thereafter, on May 21, 2025, the Dominican Republic issued Petitioner a travel document. (Soto Decl., ECF No. 13-1 at ¶ 17).

Meanwhile, Petitioner again pursued fear-based protection. DHS eventually conducted a reasonable fear interview on July 16, 2025, nearly three months after his re-detention. (Pet., ECF No. 1 at ¶ 33; Gov't Resp., ECF No. 13 at 2). Petitioner alleges that the interview occurred only after repeated requests. (Pet., ECF No. 1 at ¶ 33). On August 2, 2025, Petitioner was served with a Notice of Referral to the IJ and placed in withholding-only proceedings. (*Id.*; Soto Decl., ECF No. 13-1 at ¶ 20).

On October 10, 2025, the IJ held a merits hearing and denied Petitioner's applications for withholding of removal and protection under the Convention Against Torture. (Soto Decl., ECF No. 13-1 at ¶ 23; Pet., ECF No. 1 at ¶ 34; James Decl., ECF No. 1-2 at ¶ 15). Petitioner timely appealed to the BIA on October 29, 2025. (Soto Decl., ECF No. 13-1 at ¶ 24; Pet., ECF No. 1 at ¶ 34). That appeal remains pending. Indeed, the BIA took five months just to issue a briefing schedule and, after a request from his counsel for a three-week extension due to her caseload and a conflicting deadline, his brief was due on April 27, 2026. (Pet., ECF No. 1 at ¶¶ 40, 121; James Decl., ECF No. 1-2 at ¶ 16).

During Petitioner's detention, ICE conducted periodic custody reviews pursuant to 8 C.F.R. § 241.4. (*See* Gov't Exs. 2–6, ECF No. 13-2). In July 2025, ICE served Petitioner a Decision to Continue Detention, finding that he had failed to demonstrate that he was not a significant flight risk and that his removal was likely to occur in the reasonably foreseeable future. (Gov't Ex. 3, ECF No. 13-2 at 8). A second Decision to Continue Detention was issued on October 31, 2025,

this time asserting (apparently erroneously) that Petitioner had a "criminal conviction relating to counterfeit of identity documents." (Gov't Ex. 5, ECF No. 13-2 at 16).

Thereafter, Petitioner's counsel submitted a release request to ICE on December 18, 2025, providing extensive information regarding Petitioner's family and community ties, asserted lack of dangerousness, compliance history, and health concerns. (Pet. Ex. E, ECF No. 1-6). Counsel renewed that request on February 14, 2026. (Pet., ECF No. 1 at ¶ 26). On March 11, 2026, ICE denied release. (*Id.*; Ex. F, ECF No. 1-7). The denial states that Petitioner's prior conviction for dealing in counterfeit currency "raises significant concerns," and that "no compelling humanitarian factors" justify release. (*Id.*). Although the letter states that there was a "careful consideration of all relevant factors," it does not set forth any discussion or analysis whatsoever as to these factors. (*Id.*). According to ICE, as of April 15, 2026, the custody determination from its latest review on December 19, 2025, is still "pending with ICE-ERO Headquarters." (Soto Decl., ECF No. 13-1 at ¶ 27).

Petitioner filed the current habeas petition under 28 U.S.C. § 2241 on March 31, 2026. (ECF No. 1.) He asserts three claims: first, that his prolonged detention without a bond hearing violates the Due Process Clause under the framework of *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020); second, that his continued detention violates 8 U.S.C. § 1231(a)(6) under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because removal is not reasonably foreseeable; and third, that ICE's revocation of his order of supervision violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. (Pet., ECF No. 1 at ¶¶ 112–42). Petitioner seeks immediate release or, in the alternative, a constitutionally adequate bond hearing at which the Government bears the burden of justifying continued detention by clear and convincing evidence. (*Id.* at 49–50). Respondents filed a response on April 16, 2026, arguing that *German Santos* is

inapposite because it addressed a different detention statute; and that *Zadvydas* is satisfied because the Dominican Republic has previously issued travel documents within approximately a month and removal can proceed if and when Petitioner's pending appeal is denied. (ECF No. 13). Petitioner replied on April 30, 2026. (ECF No. 14). The Court held a hearing on May 12, 2026. (ECF No. 22).

## II.    STANDARD OF REVIEW AND JURISDICTION

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687; *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025).

As Petitioner was detained in New Jersey at the time he filed his Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction to consider his claims. Petitioner is not required to exhaust administrative remedies because he is bringing constitutional claims which the BIA cannot adjudicate and, in any event, he has already exhausted his available administrative remedies as his counsel filed a request for release which was denied, and ICE's post-custody determinations are not appealable to the BIA. *See, e.g.*, *Qatanani v. Att'y Gen.*, 144 F.4th 485, 500 (3d Cir. 2025) (recognizing that exhaustion is not required where the BIA's "lack of jurisdiction to adjudicate constitutional issues rendered it incapable of addressing the due process claim presented." (cleaned up)).

Finally, no statute divests this Court of jurisdiction because Petitioner does "not seek review of the Attorney General's exercise of discretion; rather, [he] challenge[s] the extent of the Attorney General's authority under the post-removal-period detention statute." *Zadvydas*, 533 U.S. at 688.

## III.    DISCUSSION

The question presented in this case is whether the Constitution and § 1231(a)(6) permit Petitioner's continued detention—now exceeding one year—without a bond hearing when the Government concedes that removal may not be possible for at least five months and potentially more than a year, further concedes that Petitioner does not pose a flight risk or a danger to the community, and Petitioner has previously been under supervised release for more than three years without incident and voluntarily surrendered himself for deportation in the past. The Court concludes that they do not.

Although § 1231(a)(6) does not itself require a bond hearing, see *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582–83 (2022), the absence of a statutory requirement does not resolve the constitutional question. As the Third Circuit made clear in *German Santos*, 965 F.3d 203, the Due Process Clause independently limits the Government's authority to subject a civil immigration detainee to prolonged confinement without adequate procedural safeguards. Applying that principle here, the Court concludes that Petitioner's continued detention without a bond hearing has become constitutionally unreasonable. The Court further concludes that *Zadvydas*, 533 U.S. 678, provides an independent statutory basis for relief because Petitioner's removal is not reasonably foreseeable. Petitioner shall therefore be immediately released under his previous conditions of supervision.

**A. Prolonged Immigration Detention Under § 1231(a)(6) Without a Bond Hearing Raises Serious Due Process Concerns**

The Third Circuit has repeatedly held that prolonged immigration detention without a neutral, individualized review presents serious constitutional concerns. *See German Santos*, 965 F.3d 203, 210–14; *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474–78 (3d Cir. 2015), *abrogated in part by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232–35 (3d Cir. 2011), *abrogated in part by Jennings*, 583 U.S. 281. Those cases rest on a basic principle: while civil immigration detention is undoubtedly permissible, due process requires a strong justification for continued confinement when detention becomes prolonged. *See German Santos*, 965 F.3d at 210–14.

Indeed, the Third Circuit has applied that principle to § 1231(a)(6) detention in *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208 (3d Cir. 2018). There, the court held that a noncitizen detained under § 1231(a)(6) was entitled under the statute to a bond hearing after six months, at which the Government bore the burden of proving dangerousness or flight risk by clear and convincing evidence. *Id.* at 224–26, 224 n.12. Among other things, the court noted that the DHS regulations implementing the statute, including 8 C.F.R. § 241.4, "themselves raise serious constitutional concerns." *Id.* at 227 (citation omitted). The post-custody reviews are conducted by DHS employees "who are not ostensibly neutral decision makers such as immigration judges." *Id.* Further, "the regulations also place the burden on *the alien*, rather than the Government, to prove that he or she is *not* a flight risk or a danger to the society and there is no appeal from DHS's decision." *Id.* (cleaned up). The procedure thus "fails to account for the Supreme Court's admonition that 'the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 692). Those concerns, noted nearly a decade ago, are of heightened

8

importance today given the Executive Branch's current practice of mandatory detention.

The Supreme Court later abrogated *Guerrero-Sanchez'*s statutory holding, concluding in *Arteaga-Martinez* that § 1231(a)(6) cannot be read to require a bond hearing after six months. 596 U.S. at 582–83. But *Arteaga-Martinez* did not reject the constitutional concerns that were the foundation of the Third Circuit's decision in *Guerrero-Sanchez*. To the contrary, the Supreme Court expressly declined to decide the constitutional claims and left those questions for the lower courts. *Id.* at 583. Thus, while *Guerrero-Sanchez* no longer controls as a statutory rule, its due process analysis remains highly persuasive in an as-applied challenge. It reflects the Third Circuit's considered view that prolonged detention under § 1231(a)(6), without meaningful individualized review, raises serious constitutional concerns.[3]

*German Santos* reinforces that conclusion. Although *German Santos* involved detention under § 1226(c), the opinion cannot be read, as the Government suggests, so narrowly as to apply only to that provision. The Third Circuit's analysis was constitutional, not merely statutory. It plainly held that when immigration detention becomes unreasonably prolonged, due process requires a bond hearing at which the Government must justify continued detention by clear and convincing evidence. 965 F.3d at 210, 213–14. That principle applies with equal force here even though Petitioner was detained under a different statutory provision. Section 1231(a)(6), like

---

[3]  Contrary to Respondents' suggestion, the Court is not motivated by "humanitarian inner feelings," (Hearing Tr. at 30:24–25), but rather by the significant due process concerns that both the Third Circuit and Supreme Court have recognized arise when a statutory scheme vests the Executive Branch with the unreviewable authority to make determinations implicating fundamental liberty interests. Indeed, in this case, Respondents candidly concede that the only changed circumstance after their decision to release Petitioner upon his reentry in 2022 is the change in administration. (*Id.* at 21:3–8, 24:3–16). To be sure, immigration enforcement is committed to the Executive Branch and different administrations may make different policy decisions and act with different zealousness. But the purpose of the Fifth Amendment's Due Process Clause is to ensure that fundamental rights do not depend on the outcome of elections.

§ 1226(c), does not provide Petitioner with an opportunity for a neutral bond hearing. And Petitioner, like the detainee in *German Santos*, has been confined for a prolonged period while pursuing available immigration remedies. Respondents can make no persuasive argument why the constitutional analysis set forth in *German Santos* should not apply equally here.  Indeed, other courts in this Circuit have reached the same conclusion. In *Michelin v. Oddo,* No. 23-22, 2023 WL 5044929 (W.D. Pa. Aug. 8, 2023), *recons. denied*, 2023 WL 5672278 (W.D. Pa. Sept. 1, 2023), the court applied *German Santos* to a petitioner detained under § 1231(a)(6), found his detention unreasonable, and ordered a bond hearing.

In short, that Petitioner's detention is authorized by § 1231(a)(6) as a statutory matter does not end the inquiry; the Due Process Clause separately asks whether the detention has become unreasonable and thus requires a bond hearing.

### B.  Petitioner's Detention Has Become Unreasonably Prolonged

*German Santos* identifies four non-exhaustive factors relevant to whether immigration detention has become unreasonably prolonged: (1) the duration of detention; (2) whether the detention is likely to continue; (3) the reasons for the delay; and (4) whether the conditions of confinement are meaningfully different from criminal punishment. 965 F.3d at 211. Those factors strongly favor Petitioner.

First, the duration of detention weighs heavily in Petitioner's favor. This is the "most important" factor. *Id.* And the Third Circuit has explained that detention "becomes more and more suspect" after five months. *Id.* (quoting *Diop*, 656 F.3d at 234). Here, Petitioner has been detained for more than a year.

Second, detention is likely to continue. Petitioner's withholding-only proceedings remain pending on appeal before the BIA. If the BIA remands, Petitioner's proceedings will continue

10

before the IJ. If the BIA affirms, Petitioner may seek review in the Third Circuit and, after a short administrative stay, may request a stay of removal. Thus, regardless of the precise procedural path, the record is clear that Petitioner's detention is likely to continue for a significant additional period; Respondents concede that a fair estimate is five to nine months, and potentially more than a year. (Hearing Tr. at 22:12–18).

Third, the record does not show that Petitioner has caused the delay through bad faith or dilatory conduct. Petitioner alleges that he requested a reasonable fear interview as early as July 2022, while he was on supervised release. After ICE detained him on April 22, 2025, DHS did not conduct the reasonable fear interview until July 16. Petitioner then proceeded through withholding-only proceedings, received an adverse decision from an IJ, and timely appealed to the BIA. The BIA took five months to issue a briefing schedule. The pursuit of available legal remedies does not count against Petitioner. *German Santos*, 965 F.3d at 211. If there has been any fault for delay, it lies with Respondents for failing to timely begin the process with a reasonable fear interview.

Fourth, Petitioner's conditions of confinement are not meaningfully different from criminal punishment. The unrebutted allegations in the Petition include that he is frequently locked in his cell, has no outdoor access, shares a unit with approximately forty-four detainees, and has restricted access to indoor exercise, phones, tablets, and television. (ECF No. 1 at ¶¶ 38–39). These allegations support the conclusion that his continued civil confinement is practically indistinguishable from criminal punishment. *See German Santos*, 965 F.3d at 213.

Accordingly, all four *German Santos* factors support relief. Therefore, at a minimum, due process entitles Petitioner to a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger

11

to the community. *German Santos*, 965 F.3d at 213–14. But as set forth below, the Court will instead order his immediate release.

### C. Immediate Release Is the Appropriate Remedy on This Record

Ordinarily, the remedy for unreasonably prolonged detention is a constitutionally adequate bond hearing before an IJ.[4] But a bond hearing is not the only remedy available. Where the existing record indicates that the Government could not possibly meet its heightened burden to justify continued detention, release is appropriate. *See Tropskii v. Bondi*, No. 25-3226, 2025 WL 3016518, at *5–7 (E.D. Pa. Oct. 28, 2025) (recognizing that *German Santos* does not preclude immediate release).

This is such a case. Respondents previously made the determination that Petitioner was not dangerous or a flight risk when they released him under conditions of supervised release upon his reentry into the country nearly four years ago in 2022. They cannot point to any changed circumstances other than a change in administration and a travel document they procured after terminating his supervision and re-detaining him. Respondents have never asserted that Petitioner presents a danger to the community in denying his release during the post-custody review process. In fact, they concede he is not. (Hearing Tr. at 20:10–12, 25:7–10). The only negative factor Respondents could conceivably point to is Petitioner's 2014 counterfeit-currency conviction. But they were well aware of that conviction when making the decision in 2022 to release him under

---

[4] Petitioner also asserts that this Court has the inherent authority to conduct a bond hearing itself. (ECF No. 1 at ¶ 94 (citing cases)). Indeed, in *Guerrero-Sanchez*, the district court eventually conducted its own bond hearing and ordered release. 905 F.3d at 212. Although the Government did not challenge the bond determination on appeal, nothing in the Third Circuit's opinion suggests that it was improper for the district court to do so. And given the regulations set forth in § 241.4, and Respondents' repeated denials of release to date without adequate explanation, the Court seriously doubts whether Petitioner could receive a fundamentally fair bond hearing. Nevertheless, the Court need not decide this question today because it finds that immediate release is the appropriate remedy.

supervision. And Respondents have not identified any intervening criminal conduct. His lone conviction is now more than a decade old, resulted in a sentence of time served, and does not, standing alone, establish present dangerousness.

The record likewise cannot support a flight-risk finding. Respondents again concede this point. (Hearing Tr. at 30:18 (Respondents' counsel stating he has "no reason to believe [Petitioner is] a flight risk")). After DHS reinstated Petitioner's removal order in March 2022, ICE released him on an order of supervision with weekly biometric reporting. Petitioner remained in the country under supervised release for more than three years before ICE re-detained him in April 2025. Petitioner asserts that he complied with his reporting requirements during that period, and Respondents identify no violation of supervision. Indeed, he was detained while appearing at a routine check-in. Further, during Petitioner's previous removal proceedings, he was issued an order to surrender himself for removal and he did so.

In sum, where, as here, there is no genuine dispute that Petitioner is neither a danger to the community nor a flight risk, it would be unnecessary to order a bond hearing for additional fact-finding and a return to supervised release is the appropriate remedy.

### D. *Zadvydas* Provides an Independent Basis for Release

Although the Court finds that Petitioner's release is warranted under *German Santos*, the Court does not decide the case solely on that basis. Respondents maintain that *German Santos* is inapplicable here, that considerations of flight risk and other factors are irrelevant, and that the sole legal question before the Court is whether, under *Zadvydas*, Petitioner's removal is reasonably foreseeable. (Gov't Resp., ECF No. 13 at 4; Hearing Tr. at 18:9–20:5, 30:16–22). The Court finds that it is not and that Petitioner is also entitled to release under *Zadvydas*.

Section 1231(a)(6) does not authorize indefinite detention. Rather, the Supreme Court construed that provision to permit detention only for "a period reasonably necessary to bring about th[e] alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. After six months, detention is no longer presumptively reasonable if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701.

Petitioner has met his burden here. As explained above, the Government concedes that Petitioner may not be removed while his appeal proceeds in his withholding proceedings, which may take five to nine months or even more than a year. Petitioner has already been detained more than one year—twice the period the Supreme Court identified as presumptively reasonable. And *Zadvydas* expressly instructs that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* In other words, the longer detention continues, the more concrete and imminent the Government's showing of likely removal must be.

The Government has not made that showing. The Government relies on the fact that the Dominican Republic issued Petitioner a travel document in May 2025 and on his prior removal to that country. (Gov't Resp., ECF No. 13 at 5). But the existence of a travel document does not establish a significant likelihood of removal in the reasonably foreseeable future where Petitioner cannot presently be removed because his fear-based proceedings remain pending. To be sure, *Zadvydas* claims often arise in cases where removal is not feasible because the Government has been unable to procure travel documents or otherwise facilitate removal. But, as courts in this Circuit have recognized, "prolonged incarceration for an alien whose potentially meritorious challenge to removal is part of a congested docket is indistinguishable from lengthy incarceration

14

because the alien's native country refuses to issue travel documents." *Ernest F. v. Russo*, No. 21-3700, 2021 WL 4352351, at *5 (D.N.J. Sept. 24, 2021) (quoting *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004)). The relevant question under *Zadvydas* is not whether removal is conceivable at some point in the future. *See* 533 U.S. at 702. The question is whether there is a significant likelihood of removal in the reasonably foreseeable future. After more than one year of detention, a possibility of removal that is dependent on unresolved BIA proceedings and potential Third Circuit review is too attenuated to satisfy the statute.[5]

Respondents point to authority in the Second Circuit where courts have rejected *Zadvydas* claims when removal is only delayed because of legal proceedings. *See Beckford v. Lynch,* 168 F. Supp. 3d 533, 538–39 (W.D.N.Y. 2016) ("[B]ecause the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment."). These cases, not binding here, conflict with the Third Circuit's instruction in *German Santos* that noncitizens should not be penalized for pursuing lawful remedies. 965 F.3d at 211. The Court is therefore not persuaded. *See also Michelin*, 2023 WL 5044929, at *5 (rejecting Respondents' reliance on "out-of-circuit, unpublished decisions in which the habeas court denied noncitizens' *Zadvydas* claims when the delay of removal was caused by legal proceedings.").

Respondents further rely on the Third Circuit's unpublished decision in *Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005). In that case, the Third Circuit affirmed the denial of a *Zadvydas* claim from a petitioner who had been detained for more than two years. The court found

---

[5] Respondents cannot even represent that the previously obtained travel document remains valid or whether it has expired such that a new one would need to be requested.

15

that he had not met his burden to show that travel documents would not be issued in the reasonably foreseeable future despite the Government's unexplained delay in procuring those documents. *Id.* at 81–82. As an initial matter, the Court notes that this decision substantially predates the Third Circuit's decisions in *German Santos*, *Guerrero-Sanchez*, *Diop*, and *Chavez-Alvarez* and its continued validity is thus doubtful at best. In any event, *Joseph* concerned only the availability of travel documents and there were no pending legal proceedings preventing removal as there are here.

Finally, contrary to Respondents' contention that consideration of flight risk is irrelevant under *Zadvydas*, the Supreme Court made clear in that case that civil immigration detention is constitutionally tolerable only when it serves a legitimate nonpunitive purpose. Indeed, the Government in that case identified two such purposes for § 1231: ensuring the noncitizen's appearance for removal, *i.e.*, flight risk, and protecting the community from danger. *Zadvydas*, 533 U.S. at 690–91. As the Court explained, "by definition the first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best." *Id.* It further emphasized that it has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* As the Court noted, and explained above, § 1231 does not have such procedural protections. The Court further emphasized that the "choice … is not between imprisonment and the alien living at large. It is between imprisonment and supervision under release conditions that may not be violated." 533 U.S. at 696 (cleaned up).

Put differently, *Zadvydas* does not countenance confinement for confinement's sake. Detention under § 1231 is permissible only where it serves the Government's interest in effectuating a noncitizen's removal. To be sure, in many if not most cases, the presence of a final

16

order of removal itself will create a strong enough risk of flight that detention can be justified on that basis alone, at least during the first six months when detention is presumptively reasonable. But, as this Court explained in *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–98 (D.N.J. 2025), the presumption of reasonableness even during the first six months of detention is just that, a *presumption* that is rebuttable. And in *Zadvydas*, the petitioner had a "long criminal record, involving drug crimes, attempted robbery, attempted burglary and theft" as well as a "history of flight, from both criminal and deportation proceedings." 533 U.S. at 684. This case thus presents a question that was not squarely addressed in *Zadvydas*: Even if removal is reasonably foreseeable, is detention constitutionally permissible where, as here, Petitioner has a long history of compliance with supervised release, has previously surrendered himself for deportation, and the Government concedes he is neither a flight risk nor a danger to the community? The Court need not answer this question today because it finds that removal is not reasonably foreseeable, but it has serious doubts that civil immigration detention can be constitutionally justified when it is completely untethered from the statute's purposes and instead appears to be simply punitive. *See Zadvydas*, 533 U.S. at 699 (explaining that courts should "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal").

In sum, even apart from the Due Process Clause, § 1231(a)(6) no longer authorizes Petitioner's detention. The Government has not rebutted Petitioner's showing that removal is not reasonably foreseeable. Petitioner must therefore be released under appropriate conditions of supervision.[6]

---

[6] Because the Court grants the Petition on these grounds, it need not reach Petitioner's separate APA claim.

17

## IV. CONCLUSION

For the foregoing reasons, the Petition is granted. Petitioner's continued detention under § 1231(a)(6), after more than one year in custody without a bond hearing, violates due process under the principles articulated in *German Santos* and related Third Circuit precedent. In addition, Petitioner's detention is no longer statutorily authorized under *Zadvydas* because the Government has not shown a significant likelihood of removal in the reasonably foreseeable future. Because the record cannot support a finding that Petitioner is dangerous or a flight risk, and because Petitioner previously complied with supervised release for approximately three years, immediate release under the prior conditions of supervision is warranted.

**Christine P. O'Hearn**
**United States District Judge**

DATED: May 18, 2026.

18